IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


ROGER SANDERS,                                  3:14-CV-00586-BR

            Plaintiff,                          OPINION AND ORDER

v.

CAROLYN W. COLVIN,
Commissioner, Social Security
Administration,

            Defendant.


**BRUCE W. BREWER**
P.O. Box 421
West Linn, OR 97068
(360) 688-0458

            Attorney for Plaintiff

**BILLY J. WILLIAMS**
Acting United States Attorney
**RONALD K. SILVER**
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR  97204-2902
(503) 727-1003


1 - OPINION AND ORDER

**DAVID MORADO**
Regional Chief Counsel
**LISA GOLDOFTAS**
Special Assistant United States Attorney
Social Security Administration
701 Fifth Avenue, Suite 2900
Seattle, WA 98104
(206) 615-2531

        Attorneys for Defendant


**BROWN, Judge.**

    Plaintiff Roger Sanders seeks judicial review of a final

decision of the Commissioner of the Social Security

Administration (SSA) in which she denied Plaintiff's application

for Disability Insurance Benefits (DIB) under Title II of the

Social Security Act.  This Court has jurisdiction to review the

Commissioner's final decision pursuant to 42 U.S.C. § 405(g).

    For the reasons that follow, the Court **AFFIRMS** the decision

of the Commissioner and **DISMISSES** this matter.


                    **ADMINISTRATIVE HISTORY**

    Plaintiff filed an application for DIB on October 5, 2004,

alleging a disability onset date of September 28, 1990.

Tr. 1019.[1]  The application was denied initially and on

reconsideration.  An Administrative Law Judge (ALJ) held a

hearing on April 30, 2008.  Tr. 983-1015.  At the hearing

───────────────

    [1] Citations to the official transcript of record filed by
the Commissioner on September 5, 2013, are referred to as "Tr."

Plaintiff was represented by an attorney.  Plaintiff, a medical expert (ME), and a vocational expert (VE) testified at the hearing.

The ALJ issued a decision on June 27, 2008, in which he found Plaintiff was not disabled before his December 31, 1999, date last insured, and, therefore, was not entitled to DIB. Tr. 10-22.  Plaintiff appealed the matter to the United States District Court.  On October 20, 2011, United States Magistrate Judge Paul Papak entered a Judgment of Remand in which he remanded the matter to the ALJ

> to further consider Plaintiff's date last insured as it appears it is December 31, 1991, and not December 31, 1999, as found in the decision. Further, the Administrative Law Judge shall obtain additional vocational expert testimony at step 5 regarding the number of jobs available and the support for any jobs that are inconsistent with the Dictionary of Occupational Titles.  Plaintiff will have the Opportunity for a de novo hearing.

Tr. 1029.

On March 6, 2012, the Appeals Council entered an order in which it remanded the matter to the ALJ noting:

> [A] review of the Social Security earnings record reflects that the claimant is actually so last insured on December 31, 1991. . . .  Thus, the claim for [DIB] should only be adjudicated through December 31, 1991. . . .  Moreover, . . . supplemental vocational expert evidence is needed regarding consistency with the Dictionary of Occupational Titles.

Tr. 1040.

An Administrative Law Judge (ALJ) held a hearing on remand

3 - OPINION AND ORDER

on October 29, 2013, regarding Plaintiff's disability during the closed period of September 28, 1990, through December 31, 1991. Tr. 1104-18.  At the hearing Plaintiff was represented by an attorney and a VE testified.  On December 9, 2013, an ALJ issued a decision on remand in which he found Plaintiff was not disabled between September 28, 1990, and December 31, 1991, and, therefore, he was not entitled to DIB benefits for the closed period.  Tr. 1016-28.  Pursuant to 20 C.F.R. § 404.984(d), that decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review.  Tr. 1-4. *See Sims v. Apfel*, 530 U.S. 103, 106-07 (2000).


## BACKGROUND

Plaintiff was born August 18, 1951; was 56 years old at the time of the first hearing; and was 62 years old at the time of the second hearing.  Tr. 48.  Plaintiff completed high school. Tr. 1027.  Plaintiff does not have any past relevant work experience.  Tr. 1027.

Plaintiff alleges disability during the relevant period due to degenerative disc disease of the cervical spine.  Tr. 1022.

Except when noted, Plaintiff does not challenge the ALJ's summary of the medical evidence.  After carefully reviewing the medical records, this Court adopts the ALJ's summary of the medical evidence.  *See* Tr. 1024-26.

4 - OPINION AND ORDER

## STANDARDS

The initial burden of proof rests on the claimant to establish disability.  *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012).  To meet this burden, a claimant must demonstrate his inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The ALJ must develop the record when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence.  *McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2011)(quoting *Mayes v. Massanari,* 276 F.3d 453, 459–60 (9th Cir. 2001)).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole.  42 U.S.C. § 405(g).  *See also Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1161 (9th Cir. 2012).  Substantial evidence is "relevant evidence that a reasonable mind might accept as adequate to support a conclusion."  *Molina*, 674 F.3d. at 1110-11 (quoting *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009)).  "It is more than a mere scintilla [of evidence] but less than a preponderance."  *Id.* (citing *Valentine*, 574 F.3d at 690).

The ALJ is responsible for determining credibility,
resolving conflicts in the medical evidence, and resolving
ambiguities.  *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir.
2009).  The court must weigh all of the evidence whether it
supports or detracts from the Commissioner's decision.  *Ryan v.
Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008).  Even
when the evidence is susceptible to more than one rational
interpretation, the court must uphold the Commissioner's findings
if they are supported by inferences reasonably drawn from the
record.  *Ludwig v. Astrue*, 681 F.3d 1047, 1051 (9th Cir. 2012).
The court may not substitute its judgment for that of the
Commissioner.  *Widmark v. Barnhart*, 454 F.3d 1063, 1070 (9th Cir.
2006).

## DISABILITY ANALYSIS

## I.   The Regulatory Sequential Evaluation

The Commissioner has developed a five-step sequential
inquiry to determine whether a claimant is disabled within the
meaning of the Act.  *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir.
2007).  *See also* 20 C.F.R. § 404.1520.  Each step is potentially
dispositive.

At Step One the claimant is not disabled if the Commissioner
determines the claimant is engaged in substantial gainful
activity.  20 C.F.R. § 404.1520(a)(4)(I).  *See also Keyser v.*

6 - OPINION AND ORDER

*Comm'r of Soc. Sec.*, 648 F.3d 721, 724 (9ᵗʰ Cir. 2011).

At Step Two the claimant is not disabled if the Commissioner determines the claimant does not have any medically severe impairment or combination of impairments. 20 C.F.R. §§ 404.1509, 404.1520(a)(4)(ii). *See also Keyser*, 648 F.3d at 724.

At Step Three the claimant is disabled if the Commissioner determines the claimant's impairments meet or equal one of the listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(iii). *See also Keyser*, 648 F.3d at 724. The criteria for the listed impairments, known as Listings, are enumerated in 20 C.F.R. part 404, subpart P, appendix 1 (Listed Impairments).

If the Commissioner proceeds beyond Step Three, she must assess the claimant's residual functional capacity (RFC). The claimant's RFC is an assessment of the sustained, work-related physical and mental activities the claimant can still do on a regular and continuing basis despite his limitations. 20 C.F.R. § 404.1520(e). *See also* Social Security Ruling (SSR) 96-8p. "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent schedule." SSR 96-8p, at *1. In other words, the Social Security Act does not require complete incapacity to be disabled. *Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1234-35 (9ᵗʰ Cir. 2011)(citing *Fair v. Bowen,* 885

F.2d 597, 603 (9ᵗʰ Cir. 1989)).

At Step Four the claimant is not disabled if the Commissioner determines the claimant retains the RFC to perform work he has done in the past.  20 C.F.R. § 404.1520(a)(4)(iv). *See also Keyser*, 648 F.3d at 724.

If the Commissioner reaches Step Five, she must determine whether the claimant is able to do any other work that exists in the national economy.  20 C.F.R. § 404.1520(a)(4)(v).  *See also Keyser*, 648 F.3d at 724-25.  Here the burden shifts to the Commissioner to show a significant number of jobs exist in the national economy that the claimant can perform.  *Lockwood v. Comm'r Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9ᵗʰ Cir. 2010). The Commissioner may satisfy this burden through the testimony of a VE or by reference to the Medical-Vocational Guidelines set forth in the regulations at 20 C.F.R. part 404, subpart P, appendix 2.  If the Commissioner meets this burden, the claimant is not disabled.  20 C.F.R. § 404.1520(g)(1).

## ALJ'S FINDINGS

At Step One the ALJ found Plaintiff had not engaged in substantial gainful activity during the relevant period of September 28, 1990, through December 31, 1991.  Tr. 1022.

At Step Two the ALJ found Plaintiff during the relevant period had the severe impairment of degenerative disc disease of

the cervical spine.  Tr. 1022.  The ALJ found Plaintiff's
impairments of hepatitis C, liver disease, and a hernia were not
severe during the relevant period.  Tr. 1022.

At Step Three the ALJ concluded Plaintiff's medically
determinable impairment during the relevant period did not meet
or medically equal one of the listed impairments in 20 C.F.R.
part 404, subpart P, appendix 1.  Tr. 1022.  The ALJ found
Plaintiff had the RFC during the relevant period to perform light
work.  Tr. 1022.  The ALJ found Plaintiff could lift ten pounds
frequently and twenty pounds occasionally, could walk half a
block, could stand for thirty minutes, and could sit for one
hour.  Tr. 1022.  The ALJ found the Plaintiff could occasionally
use his right upper extremity for reaching above shoulder height
and occasionally rotate his head or neck.  Tr. 1022.  The ALJ
also found Plaintiff was "limited to repetitive tasks without the
exercise of independent judgment."  Tr. 1022.

At Step Four the ALJ concluded Plaintiff had not performed
any past relevant work.  Tr. 1027.

At Step Five the ALJ found Plaintiff could perform jobs
during the relevant period that exist in significant numbers in
the national economy.  Tr. 1027.  Accordingly, the ALJ found
Plaintiff was not disabled during the relevant period.

9 - OPINION AND ORDER

## DISCUSSION

Plaintiff contends the ALJ erred when he (1) did not give Plaintiff a *de novo* hearing; (2) improperly rejected Plaintiff's testimony; (3) improperly gave "little weight" to the opinion of nontreating physician Thomas Gritzka, M.D.; (4) erred at Step Three when he found Plaintiff's impairment did not medically equal Listing 1.04; and (5) did not explain inconsistences between the VE's testimony and the information contained in the DOT.

## I.   **Plaintiff received a sufficient hearing**.

As noted, Magistrate Judge Papak and the Appeals Council directed the ALJ to conduct a *de novo* hearing on remand.  The Appeals Council directed the ALJ to provide Plaintiff "and his representative with the opportunity to present additional, relevant evidence and/or argument regarding the period ending December 31, 1991."  Tr. 1019, 1041.  Plaintiff asserts he did not receive a *do novo* hearing because he did not testify at the hearing on remand.

At the hearing on remand Plaintiff's attorney explained Plaintiff was not at the hearing because Plaintiff's counsel had been unable to contact Plaintiff.  Tr. 1107.  The ALJ noted Plaintiff was not a necessary witness on remand because Plaintiff already had testified fully at the April 2008 hearing about his impairments and limitations during the remote, closed period.

10 - OPINION AND ORDER

Tr. 1108.  Plaintiff's attorney proceeded with the hearing.
Tr. 1104-18.

"The burden is on the party claiming error to demonstrate
not only the error, but also that it affected his substantial
rights, which is to say, not merely his procedural rights."
*Ludwig v. Astrue*, 681 F.3d 1047, 1054 (9th Cir. 2012).  Because
Plaintiff testified about his impairments and their effect on his
ability to work during the relevant period at the first hearing,
the Court concludes Plaintiff has not established that the ALJ
erred when he found Plaintiff's testimony was unnecessary on
remand nor has Plaintiff shown any such error was not harmless.

**II.  The ALJ gave clear and convincing reasons for partially
rejecting Plaintiff's testimony.**

Plaintiff alleges the ALJ erred when he failed to give clear
and convincing reasons for partially rejecting Plaintiff's
testimony at the April 2008 hearing.

In *Cotton v. Bowen* the Ninth Circuit established two
requirements for a claimant to present credible symptom
testimony:  The claimant must produce objective medical evidence
of an impairment or impairments, and he must show the impairment
or combination of impairments could reasonably be expected to
produce some degree of symptom.  *Cotton*, 799 F.2d 1403, 1407 (9th
Cir. 1986).  The claimant, however, need not produce objective
medical evidence of the actual symptoms or their severity.
*Smolen*, 80 F.3d at 1284.

11 - OPINION AND ORDER

If the claimant satisfies the above test and there is not any affirmative evidence of malingering, the ALJ can reject the claimant's pain testimony only if he provides clear and convincing reasons for doing so.  *Parra v. Astrue,* 481 F.3d 742, 750 (9ᵗʰ Cir. 2007)(citing *Lester v. Chater*, 81 F.3d 821, 834 (9ᵗʰ Cir. 1995)).  General assertions that the claimant's testimony is not credible are insufficient.  *Id.*  The ALJ must identify "what testimony is not credible and what evidence undermines the claimant's complaints."  *Id.* (quoting *Lester*, 81 F.3d at 834).

At the April 2008 hearing Plaintiff testified he did not believe he could have worked during the closed period because at that time he spent "[all] day long" lying down to keep pressure off of his neck and taking pain medication.  Tr. 995.  Plaintiff testified during the relevant period that he had pain at "a ten [on a scale of one to ten and [he could] get it down to maybe a seven by taking pain medication . . . and [using] that little TENS machine."  Tr. 996.  Plaintiff conceded Thomas Rosenbaum, M.D., his treating neurosurgeon during the closed period, "suggested surgery would be something [Plaintiff] should consider."  Tr. 994.  Plaintiff, however, did not "want to take a chance on doing any kind of neck surgery because I was scared that maybe it would paralyze me forever or something," and "as long as I kept going to [the] chiropractor and kept doing the medication I was out of pain enough."  Tr. 995.

12 - OPINION AND ORDER

The ALJ found Plaintiff's testimony at the April 2008
hearing to be only "partial[ly] credible."  Tr. 1024.

The ALJ found Plaintiff's work history undermined his
assertion of total disability during the closed period.
Tr. 1026.  Specifically, even though Plaintiff testified he
performed salvage logging work, Plaintiff's certified earnings
record did not show any earnings by Plaintiff from 1980 through
1989, which was ten years before Plaintiff's alleged onset date.
The ALJ noted "[s]uch a . . . work history . . . raises questions
as to whether [Plaintiff's] . . . unemployment [during the closed
period] is actually due to his medical impairments."  Tr. 1026.
The ALJ also found Plaintiff's self-described activities of daily
living during the closed period were not "limited to the extent
one would expect, given the complaints of disabling symptoms and
limitations."  Tr. 1026.  Specifically, Plaintiff reported he was
able to do chores such as cooking, laundry, and cleaning; he was
able to drive, grocery shop, and do household errands; and he was
independent in his personal hygiene and financial affairs.
Tr. 1026.  Finally, the ALJ noted the treatment that Plaintiff
received during the closed period was "essentially routine and/or
conservative in nature and [was] generally successful in
controlling his symptoms" as indicated by Plaintiff's refusal to
undergo surgery.  Tr. 1027.

On this record the Court finds the ALJ provided clear and

13 - OPINION AND ORDER

convincing reasons supported by substantial evidence in the

record for finding Plaintiff's testimony was only partially

credible.  The Court, therefore, concludes the ALJ did not err

when he rejected Plaintiff's testimony in part.

### III. The ALJ did not err when he gave little weight to the opinion of reviewing physician Thomas Gritzka, M.D.

On June 13, 2008, Dr. Gritzka, a nontreating, reviewing

physician, opined in a letter to Plaintiff's counsel that

Plaintiff "suffered from clinically significant herniated discs

at CS-6 and C6-7."  Tr. 981.  Dr. Gritzak further stated:

> Based on the objective evidence, [Plaintiff's]
> spine condition has equaled listed impairment 1.04
> since at least 6-29-90.  His findings as of that
> date are equal in severity to the findings set
> forth by the listing. . . .  His condition at that
> time did not strictly meet listing 1.04A because
> he did not have documented motor loss.  However,
> the forgoing [*sic*] findings (two levels of
> herniated nucleus pulposi, two levels of nerve
> root compromise *i.e.* compression, thecal sac
> indentation, and reversal of the cervical lordotic
> curve caused by muscle splinting) are medically
> equivalent to the findings set forth in the "A"'
> category of listing l.04.  In other words, the
> clinical and radiographic evidence establishes a
> near-meeting of the listing but for the lack of
> documented motor loss.  However, the other
> findings, in fact, represent a more debilitating
> and painful condition than mere motor loss.

Tr. 982.  The ALJ gave Dr. Gritzka's opinion "little weight."

Tr. 1026.

A nonexamining physician is one who neither examines nor

treats the claimant.  *Lester*, 81 F.3d at 830.  "The Commissioner

may reject the opinion of a non-examining physician by reference

14 - OPINION AND ORDER

to specific evidence in the medical record." *Sousa v. Callahan*, 143 F.3d 1240, 1244 (9th Cir. 1998)(citation omitted).  "The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician." *Id.* at 831.  A nonexamining physician's opinion can constitute substantial evidence if it is supported by other evidence in the record.  *Morgan v. Comm'r of Soc. Sec. Admin*, 169 F.3d 595, 600 (9th Cir. 1999).

The ALJ noted Dr. Gritzka's opinion did not "square with the examination results of Dr. Rosenbaum," Plaintiff's treating neurosurgeon.  Tr. 1026.  Specifically, Dr. Rosenbaum noted in a November 1990 letter addressed to Plaintiff's chiropractor and drafted after an examination of Plaintiff:

> It appears that [Plaintiff] has made very significant progress with chiropractic treatment and is now at a low level of discomfort.  I concurred with him that continued chiropractic treatment would be appropriate and also gave him a prescription for Clinoril as an anti-inflammatory agent to be used for several weeks and then on an as necessary basis if it offers him any relief.  I asked him to contact my office should he have an exacerbation of his symptoms or need to consider the surgical alternative in the future.

Tr. 177.  In addition, in August 1991 Plaintiff's chiropractor cleared Plaintiff to work during Plaintiff's time in jail. Tr. 183.  In June 1991 Plaintiff reported to his chiropractor

15 - OPINION AND ORDER

that he had been "lifting heavy furniture for the County."
Tr. 185.

The ALJ also noted Frank McBarron, M.D., a medical expert,
testified at the April 2008 hearing that Plaintiff's "treatment
notes and radiological imaging [did] not support a finding of
disability prior to 2004."  Tr. 1025.  Dr. McBarron also
testified although Plaintiff "may have experienced pain and/or
decreased rand of motion prior to 2004, such symptoms do not
satisfy the criteria of section 1.04."  Tr. 1025.

On this record the Court concludes the ALJ did not err when
he gave little weight to the opinion of Dr. Gritzka because the
ALJ supported his decision by reference to specific, substantial
evidence in the record.

**IV.  The ALJ did not err at Step Three.**

Plaintiff asserts the ALJ erred at Step Three when he found
Plaintiff's impairment did not equal Listing 1.04 during the
relevant period.  Plaintiff relies on the opinion of Dr. Gritzka
in which he opined that Plaintiff's impairment equaled Listing
1.04.

The decision whether a plaintiff equals a Listing is an
issue reserved to the Commissioner.  *See* SSR 96-5p at *3-4; 20
C.F.R. § 404.1527(d)(3).  The Commissioner "will not give any
special significance to the source of an opinion on issues
reserved to the Commissioner."  20 C.F.R. § 404.1527(d)(3);

SSR 96-5p.  As noted, the ALJ gave little weight to Dr. Gritzka's

opinion for legally sufficient reasons.  In addition, an "opinion

is . . . less persuasive [when] it was obtained by Appellant only

after the ALJ issued an adverse determination."  *Weetman v.*

*Sullivan*, 877 F.2d 20, 23 (9th Cir. 1989).  Here Dr. Gritzka's

opinion was solicited after Dr. McBarron opined Plaintiff did not

meet Listing 1.04 during the relevant period.

     On this record the Court finds the ALJ did not err when he

found Plaintiff's impairment was not equivalent to Listing 1.04

because the ALJ provided specific reasons supported by

substantial evidence in the record for doing so.

## V.    The ALJ did not err at Step Five.

     Plaintiff asserts the ALJ erred at Step Five when he relied

on VE "testimony that diverged from the Dictionary of

Occupational Titles without explanation."  Specifically,

Plaintiff asserts

> Plaintiff cannot perform the prolonged sitting
> required of sedentary jobs. . . .  Most unskilled
> occupations do not allow the worker to change
> positions at will.  A worker who cannot sit for
> prolonged periods cannot perform the sitting
> necessary for sedentary work and a worker who
> cannot be on his feet for prolonged periods cannot
> perform the standing/walking necessary for the
> performance of light jobs.  SSR 83-12.2.  The
> sedentary job identified by the ALJ to deny the
> claim in step five is not described by the DOT as
> allowing the worker to alternate out of the seated
> position after one hour.  Nor are the light jobs
> identified by the ALJ described by the DOT as

> allowing the worker to walk half a block and stand
> only 30 minutes.

Pl.'s Opening Br. at 13.

At the October 2013 hearing the ALJ asked the VE a
hypothetical that included all of the limitations that the ALJ
set out in Plaintiff's RFC.  The ALJ also asked the VE to advise
him whether any of the positions identified by the VE were
inconsistent with the DOT.  The VE identified the sedentary
position of call operator and two light positions of cashier and
rental clerk and did not indicate that any of those positions
were inconsistent with the DOT.  Tr. 1112-13.

When a VE's testimony deviates from the DOT, "the ALJ must
first determine whether a conflict exists" and then "determine
whether the vocational expert's explanation for the conflict is
reasonable and whether a basis exists for relying on the expert"
rather than the DOT.  *Massachi v. Astrue*, 486 F.3d 1149, 1153
(9th Cir. 2007).  Reasonable explanations for conflicts between
the DOT and VE testimony include the reality that "[e]ach
occupation [in the DOT] represents numerous jobs," VEs may have
additional information about particular job requirements from
other publications or from the VE's professional experience, and
"[t]he DOT lists *maximum* requirements of occupations as generally
performed, not the range of requirements of a particular job as
it is performed in specific settings."  SSR 00-49, 2000 WL
1898704, at *2-*3 (Dec. 4, 2000)(emphasis added).  *See also*

18 - OPINION AND ORDER

*Massachi*, 486 F.3d at 1153 n.17.

Here Plaintiff noted SSR 83-12 has found "[u]nskilled types of jobs are particularly structured so that a person cannot ordinarily sit or stand at will."  The record, however, does not reflect Plaintiff needed to stand at will.  Instead the record reflects and the ALJ included in his hypothetical to the VE that Plaintiff would only need to change positions after sitting for an hour.  In addition, the DOT explanations for the light jobs identified by the VE are not inconsistent with Plaintiff's RFC.  For example, the DOT describes the cashier position as follows:

> Even though the weight lifted may be only a negligible amount, a job should be rated Light Work:  (1) when it requires walking or standing to a significant degree; or (2) when it requires sitting most of the time but entails pushing and/or pulling of arm or leg controls; and/or (3) when the job requires working at a production rate pace entailing the constant pushing and/or pulling of materials even though the weight of those materials is negligible.

DOT 211.462-010 (cashier).

On this record the Court does not find any basis to conclude that the VE's testimony contradicts the DOT, and, therefore, the ALJ did not err when he relied on the testimony of the VE in finding Plaintiff could perform other work in the national economy during the closed period.

## CONCLUSION

For these reasons, the Court **AFFIRMS** the decision of the

19 - OPINION AND ORDER

Commissioner and **DISMISSES** this matter.

      IT IS SO ORDERED.

      DATED this 7th day of July, 2015.


                                    /s/ Anna J. Brown


                                    ANNA J. BROWN
                                    United States District Judge

20 - OPINION AND ORDER